# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OSWALD GOOCH, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES** |
| BRISTOL-MYERS SQUIBB COMPANY; | |
| ASTRAZENECA PHARMACEUTICALS | |
| LP; and ASTRAZENECA LP, | |
| Defendants. | |
| | JURY TRIAL DEMANDED |

COMES NOW, Plaintiff, OSWALD GOOCH, by and through the undersigned counsel, and brings this Complaint against Defendants, BRISTOL-MYERS SQUIBB COMPANY, ASTRAZENECA PHARMACEUTICALS LP, and ASTRAZENECA LP, and alleges as follows:

## I.    INTRODUCTION

1.    This is an action for damages relating to the Defendants' design, manufacture, sale, marketing, advertising, promotion, labeling, packaging, and distribution of their drug Saxagliptin.  Defendants sell their Saxagliptin drug under the brand names Onglyza and Kombiglyze XR.  Saxagliptin, in any of its forms or products, including Onglyza and Kombiglyze XR, shall collectively be referred to herein as "Saxagliptin."

2.    Saxagliptin is prescribed to help lower blood sugar levels in persons with type 2 diabetes mellitus.

3.      The use of Saxagliptin can cause heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

4.      Plaintiff ingested Saxagliptin, and as a result of use of the drug suffered injuries.

## II.      <u>GENERAL ALLEGATIONS</u>

5.      Plaintiff, OSWALD GOOCH ("Plaintiff"), by and through the undersigned counsel, brings this action for personal injuries suffered as a result of Plaintiff being prescribed and ingesting the defective and unreasonably dangerous prescription drug(s) Onglyza and/or Kombiglyze XR.

6.      Onglyza and Kombiglyze XR are prescribed to help lower blood sugar levels in persons with type 2 diabetes mellitus, and at all times relevant hereto, were manufactured, designed, tested, packaged, labeled, marketed, advertised, promoted, distributed, and sold by Defendants Bristol-Myers Squibb Company, AstraZeneca LP, and AstraZeneca Pharmaceuticals LP (collectively, "Defendants").

7.      Hereinafter, AstraZeneca Pharmaceuticals LP and AstraZeneca LP may at times be referred to collectively as the "AstraZeneca Defendants."

8.      On information and belief, Plaintiff ingested Saxagliptin and was caused to suffer injuries and damages.

## III.      <u>PARTIES</u>

9.      At all times relevant and material hereto, Plaintiff was and is an individual, citizen and resident of the State of Texas.

10.      Plaintiff ingested Saxagliptin approximately from June 3, 2011, until December 24, 2016, resulting in personal injury, namely congestive heart failure, and the resulting damages alleged herein.

11.     Defendant Bristol-Myers Squibb Company ("BMS") is a Delaware corporation with its principal place of business at 345 Park Avenue, New York, New York.  BMS is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Onglyza and Kombiglyze XR.  At all relevant times, BMS has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling and marketing of Saxagliptin within the State of New York and throughout the United States, including Plaintiff's state of residence.

12.     Defendant AstraZeneca LP ("AZ") is a Delaware limited partnership with its principal place of business at 1800 Concord Pike, Wilmington, Delaware 19803. The sole partner of AZ is AstraZeneca Pharmaceuticals LP (described below). Accordingly, for purposes of diversity jurisdiction, AZ is a citizen of Delaware. AZ is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Onglyza and Kombiglyze XR.  At all relevant times, AZ has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling and marketing of Saxagliptin within the State of New York and throughout the United States, including Plaintiff's state of residence.

13.     Defendant AstraZeneca Pharmaceuticals LP ("AZ Pharma") is a Delaware limited partnership with its principal place of business at 1800 Concord Pike, Wilmington, Delaware 19803. The general and limited partners of AZ Pharma are (i) AstraZeneca AB (described below), (ii) Zeneca Inc., (iii) Astra USA Inc., and (iv) Astra U.S. Holdings Corporation. Astra

USA Inc., Zeneca Inc., and Astra U.S. Holdings Corporation are Delaware corporations with their principal places of business in Delaware. Accordingly, for purposes of diversity jurisdiction, AZ Pharma is a citizen of Delaware. AZ Pharma is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Onglyza and Kombiglyze XR.  At all relevant times, AZ Pharma has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling and marketing of Saxagliptin within the State of New York and throughout the United States, including Plaintiff's state of residence.

14.     AstraZeneca PLC is a United Kingdom corporation with its principal place of business in Cambridge, England. AstraZeneca PLC is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Onglyza and Kombiglyze XR.

15.     AstraZeneca AB is a Swedish Corporation with its principal place of business in Sodertalje, Sweden. AstraZeneca AB is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Onglyza and Kombiglyze XR.

16.     Defendants are responsible for designing, developing, manufacturing, marketing, distributing, selling and otherwise introducing Onglyza and Kombiglyze XR into the stream of commerce.  At all relevant times, each Defendant acted in every respect as the agent and alter ego of each and all other Defendants.

17.     At all relevant times, Defendants acted in concert with one another to fraudulently convey false and misleading information concerning the safety and efficacy of Saxagliptin and to actively and affirmatively conceal the risks of serious adverse events, including heart failure, congestive heart failure, cardiac failure, death from heart failure and other adverse effects associated with Saxagliptin from the public, Plaintiff, physicians, and other healthcare providers. These concerted efforts resulted in significant harm to those treated with Saxagliptin, including Plaintiff.  But for the actions, inaction, omissions, and active concealment by Defendants, individually, jointly, and in concert with one another, Plaintiff would not have ingested Saxagliptin.

18.     At all times alleged herein, Defendants were engaged in the business of, or were successors-in-interest to entities engaged in the business of, researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, and/or advertising for sale or selling Saxagliptin.

19.     At all times alleged herein, Defendants were authorized to conduct or engage in business within the State of New York and supplied Saxagliptin within the State of New York and throughout the United States.  Defendants derived and derive substantial financial benefit and profits as a result of designing, manufacturing, marketing, advertising, distributing and selling and Saxagliptin within the State of New York and throughout the United States.

20.     The combined acts and/or omissions of Defendants resulted in indivisible injuries to Plaintiff.  Each Defendant is a joint tortfeasor and/or co-conspirator and is jointly and severally liable to Plaintiff for the negligent, reckless, knowing, and/or intentional acts and

omissions alleged herein.  Each Defendant directed, authorized and/or ratified the conduct of each and every other Defendant.

## IV.     JURISDICTION AND VENUE

21.     Federal subject-matter jurisdiction in the constituent actions is based upon 28 U.S.C. § 1332(a).  Plaintiff alleges the existence of subject-matter jurisdiction, and absent objection, there is complete diversity among Plaintiff and Defendants because Defendants are incorporated and have their principal places of business in states other than the state in which Plaintiff is a resident and citizen.  In addition, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

22.     Defendants conducted meetings, telephone calls, conference calls, webinars, and email communications between the respective companies and also their consultants and agents involving the design, development regulatory actions, marketing and distribution of the drugs Onglyza and Kombiglyze XR, in the State of New York.  Thirteen clinical trials relating to Saxagliptin have been or currently are being conducted by the AstraZeneca Defendants in the State of New York.  As such, this Court has personal jurisdiction over all named defendants.

23.     Thus, venue of this case is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because BMS is a resident of this District and a substantial part of the events giving rise to Plaintiff's claims occurred in the Southern District of New York.

## V.     FACTUAL ALLEGATIONS

24.     Type 2 diabetes mellitus is a chronic disease, characterized by insulin resistance and deficient insulin secretion leading to high blood sugar levels and/or hyperglycemia.  Type 2 diabetics have an increased risk of cardiovascular  disease, which is the leading cause of morbidity and mortality in the patient population.  Therefore, it is critical that drugs developed to

allegedly help prevent type 2 diabetes do not increase the risk of cardiovascular adverse events in users.  With full knowledge of the susceptibility of type 2 diabetics to cardiovascular related adverse events, Defendants developed their drugs Onglyza and Kombiglyze XR to market and sell them to type 2 diabetics for the supposed purpose of lowering adverse complications associated with type 2 diabetes.

25.     Saxagliptin works by inhibiting the proteolytic activity of DPP4, thereby potentiating the action of Glucagon-like peptide-1 (GLP-1), an anti-hyperglycemic hormone, known as an incretin.  This induces glucose-dependent stimulation of insulin secretion while suppressing glucagon secretion, which may help Saxagliptin users lower their HA1c.

26.     DPP4 inhibitors, including Saxagliptin, inhibit natural enzymes from cleaving, or stopping, the endogenous GLP-1, which enables the insulin stimulation to continue longer than it naturally occurs after meals in the postprandial state.  Endogenous GLP-1's half-life is approximately two minutes without Saxagliptin exposure, but survives for at least three hours during Saxagliptin exposure.  Therefore, Saxagliptin manipulates the natural biological incretin effect by enabling the process to continue for an exponentially greater period of time than what the human body has adapted as a sufficient and safe period of time.

27.     At no time during the development of their Saxagliptin drugs did Defendants perform adequate studies to determine if their drug, and its drastic alterations of the natural incretin hormone cycle, may cause increased risks of cardiovascular related adverse events.  It is critical to conduct such studies when developing, and then marketing, drugs to diabetics who already suffer from increased cardiovascular risk.

28.     On July 31, 2009, Defendants began marketing, distributing, and selling Onglyza. On November 5, 2010, Defendants began marketing, distributing, and selling Kombiglyze XR.

Defendants marketed both drugs as treatments for type 2 diabetes and agents to help reduce adverse complications associated with the disease. At no time did Defendants perform adequate studies or adequately warn that Onglyza and Kombiglyze XR increased the risk of cardiovascular related adverse events.

29.     After Defendants began selling Onglyza and Kombiglyze XR and deriving substantial profits from such sales, Defendants finally conducted what the FDA guidance recommended back in December 2008– a Cardiovascular Outcome Trial ("CVOT") for Saxagliptin.

30.     The CVOT for Saxagliptin entitled, "Saxagliptin Assessment of Vascular Outcomes Recorded in Patients with Diabetes Mellitus — Thrombolysis in Myocardial Infarction 53" (SAVOR-TIMI 53 or more simply, "SAVOR"), found Onglyza users had a statistically significant increased risk of being hospitalized due to heart failure.

31.     After receiving and reviewing the disturbing findings from the SAVOR trial, the FDA requested the raw clinical trial data, free from manipulation by Defendants, and performed its own analysis of the SAVOR data. Following the FDA's detailed analysis and review of the SAVOR safety signal for hospitalization for heart failure, the FDA's Endocrinologic and Metabolic Drugs Advisory Committee convened and voted 14 to 1, with 14 votes in favor of the FDA ordering Defendants to add a heart failure warning to Saxagliptin labels and one vote for withdrawing Saxagliptin from the U.S. market, as merely ordering a warning would be insufficient.[1] Despite the SAVOR findings and the FDA Advisory Committee's voting to add a

---

[1] Diabetes in Control (April 17, 2015) "FDA Panel Recommends New CV Safety Warnings on Onglyza and Nesina DPP-4s," available from: http://www.diabetesincontrol.com/articles/diabetes-news/17836-fda-panel-recommends-new-cv-safety-warnings-on-onglyza-and-nesina-dpp-4s-

warning (or remove the drugs from the market), Defendants failed and continue to fail to warn. Once again, drug company Defendants prioritized sales over patient safety.

32.     In addition to lacking adequate risk information to inform physicians and/or consumers about serious cardiovascular side effects, Saxagliptin drugs lack sufficient benefit to tolerate the risks posed by its use because other anti-diabetes drugs are available that do not carry the increased cardiac risks caused by Saxagliptin.

33.     Defendants, with knowledge of the true relationship between use of Saxagliptin and heart failure, congestive heart failure, cardiac failure, and death related to those events, promoted and continue to promote Saxagliptin as a safe and effective treatment for type 2 diabetes mellitus.

34.     Defendants over-promoted Saxagliptin and inadequately warned about Saxagliptin's risks through various avenues including, but not limited to, the following:

  a.     in print marketing, advertising, and promotional materials;

  b.     on Defendant-owned, controlled, or supported websites and blogs;

  c.     in materials and advertisements to Plaintiff and consumers stating the use of Saxagliptin is safe; and

  d.     in promoting Saxagliptin to doctors, clinics, and users as being safer than (or as safe as) other drugs for the treatment of type 2 diabetes mellitus.

35.     Defendants failed to perform adequate safety testing on Saxagliptin before marketing it to consumers, including Plaintiff, physicians, including Plaintiff's prescribing physicians, and the medical community.  Defendants also failed to conduct any safety testing that adequately assessed Saxagliptin-related cardiovascular risk until conducting the SAVOR trial.

36.     Despite the findings of the SAVOR trial, Defendants still have not undertaken efforts to change the labels and reference materials for Saxagliptin to include a reference or warning regarding heart failure, congestive heart failure, cardiac failure, and death related to those events.

VI.     **PLAINTIFF'S USE OF SAXAGLIPTIN**

37.     On information and belief, Plaintiff was prescribed and ingested Saxagliptin approximately from June 3, 2011, until December 24, 2016.

38.     On information and belief, Plaintiff used Saxagliptin that Defendants manufactured, packaged, marketed, sold and/or distributed.  The Saxagliptin reached Plaintiff without substantial change to the condition in which it left Defendants' control.

39.     On information and belief, while using Saxagliptin, and as a direct and proximate result thereof, Plaintiff developed serious and/or permanent adverse effects, namely congestive heart failure on or about July 1, 2016, which resulted in hospitalization and extensive treatment.

40.     As a result of said injuries, Plaintiff suffered significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of earnings and earning capacity, and have and will incur past and future medical expenses.

41.     At all relevant times, Defendants knew that Saxagliptin significantly increased the risk of adverse cardiovascular events, including heart failure, congestive heart failure, cardiac failure, and death related to those events in the already at-risk population of diabetics for whom the drug was designed and to whom the drug is prescribed.  Despite knowledge of these risks, Defendants continued to manufacture, market, distribute, sell, and profit from Saxagliptin sales.

42.     Despite such knowledge, Defendants knowingly, purposely, and deliberately failed to adequately warn Plaintiff, patients, consumers, medical providers, and the public of the

increased risk of serious cardiovascular injury caused by Saxagliptin, including, but not limited to, heart failure, congestive heart failure, cardiac failure, and death related to those events.

43.     Upon information and belief, if Defendants had adequately and appropriately warned Plaintiff's physicians about the increased risks that Saxagliptin causes, Plaintiff's prescribing physicians

      a.     would not have prescribed it to Plaintiff;

      b.     would have changed their treatment of Plaintiff's type 2 diabetes mellitus;

      c.     would have changed the way they warned Plaintiff about the signs and symptoms of serious adverse effects of Saxagliptin; and

      d.     would have discussed with Plaintiff the true risks of heart failure, congestive heart failure, cardiac failure, and death related to those events, and other serious adverse events.

44.     On information and belief, Plaintiff's prescribing health care providers were unaware of the true degree, incidence, and risk of heart failure, congestive heart failure, cardiac failure, and death related to those events caused by Saxagliptin; had they been so informed, Plaintiff's physicians would have used and prescribed alternative therapies to treat Plaintiff's type 2 diabetes mellitus.

45.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered congestive heart failure, which resulted in damages to Plaintiff in a sum exceeding $75,000.00, exclusive of interest and costs.

46.     As a direct and proximate result of Defendants' conduct, Plaintiff incurred and will continue to incur obligations and expenses for medical care, testing and treatment.  As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of income, wages,

profits and commissions, diminishment and/or total loss of earning potential, and other pecuniary losses.

47.     In committing the acts alleged herein, Defendants acted (a) maliciously, wantonly, and/or with a recklessness suggesting improper motive or vindictiveness, and/or (b) with fraud, malice, and/or gross negligence.  The imposition of punitive damages is, therefore, warranted.

## VII.   ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiff pleads all Counts in this Complaint in the broadest sense, pursuant to all laws that may apply according to choice of law principles, including the law of the Plaintiff's resident State.

48.     Plaintiff asserts all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including but not limited to equitable tolling, class action tolling, delayed discovery, discovery rule and fraudulent concealment.

49.     Plaintiff pleads that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiff knew or, through the exercise of reasonable care and diligence should have known, of facts indicating that Plaintiff had been injured, the cause of the injury and the tortious nature of the wrongdoing that caused the injury.

50.     Despite diligent investigation by Plaintiff into the cause of their injuries, the nature of Plaintiff's injuries and damages and their relationship to the Saxagliptin was not discovered, and through reasonable care and due diligence could not have been discovered, until

a date within the applicable statute of limitations for filing Plaintiff's claims. Therefore, under appropriate application of the discovery rule, Plaintiff's suit was filed well within the applicable statutory limitations period.

51.     The running of the statute of limitations in this case is tolled due to equitable tolling. Defendants are estopped from asserting a statute of limitations defense due to Defendants' fraudulent concealment, through affirmative misrepresentations and omissions, from Plaintiff and/or the consuming public of the true risks associated with Saxagliptin. As a result of the Defendants' fraudulent concealment, Plaintiff and/or Plaintiff's physicians were unaware, and could not have known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of the wrongful acts and omissions of the Defendants.

52.     Furthermore, the Defendants are estopped from relying on any statute of limitations because of their concealment of the truth, quality and nature of Saxagliptin. The Defendants were under a duty to disclose the true character, quality and nature of Saxagliptin because this was nonpublic information over which the Defendants had and continue to have exclusive control, and because the Defendants knew that this information was not available to Plaintiff, Plaintiff's medical providers and/or to their health facilities.

53.     Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonably known risks.  Plaintiff and/or Plaintiff's physicians could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks and, instead, were forced to rely on Defendants' representations.

54.     Defendants were and continue to have information and data within their exclusive possession and control that show the risk and dangers that Saxagliptin causes, which is not otherwise in the possession or available to Plaintiff and/or Plaintiff's physicians.

55.     At the time of Plaintiff's injuries, Plaintiff and/or Plaintiff's physicians were not aware of any facts which would have made a reasonably prudent person suspicious of Defendants' wrongdoing because Plaintiff and Plaintiff's physicians reasonably relied on Defendants' representations that Saxagliptin do not cause serious cardiovascular adverse events.

56.     At no time prior to Plaintiff's eventual discovery of wrongdoing did any of Plaintiff's doctors ever inform, advise, suggest or otherwise imply that Saxagliptin use was a potential contributing cause of Plaintiff's congestive heart failure.

57.     Plaintiff reasonably relied on the skill and judgment of Plaintiff's doctors and had no reason to further investigate, inquire into or suspect that Saxagliptin caused Plaintiff's conditions.

58.     Plaintiff exercised reasonable diligence in an attempt to discover the cause of Plaintiff's cardiovascular injuries. Plaintiff relied on Plaintiff's physicians to advise Plaintiff of any known complications. Plaintiff had no reason to believe their injuries were the result of any wrongdoing, whether intentional and/or negligent, until the discovery dates suggested below and are therefore relying on the benefit of the discovery rule.

59.     Plaintiff had neither knowledge nor reason to suspect that the Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment and wrongdoing by the Defendants, Plaintiff could not have reasonably discovered the wrongdoing at the time of his injury.

60.     At the time of Plaintiff's injuries, Plaintiff did not have access to or actually receive any studies or information recognizing the increased risk of cardiovascular events, including heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions, caused by Saxagliptin use or have any discussions with their doctors that there was an association between their cardiovascular events and/or injuries and Saxagliptin use.

## VIII.   CAUSES OF ACTION

### COUNT I

### NEGLIGENCE

Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges as follows:

61.     Defendants negligently manufactured, designed, labeled, packaged, distributed, marketed, advertised, and sold Saxagliptin.

62.     At all relevant and material times, Defendants had a duty to Plaintiff to exercise reasonable care in the design, manufacture, advertising, marketing, labeling, packaging, distribution, post-market safety monitoring, reporting of adverse events, and sale of Saxagliptin, including a duty to ensure that the products did not cause users such as Plaintiff to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

63.     Defendants breached their duty of care to Plaintiff and were negligent in their actions, misrepresentations, and omissions in numerous ways, including but not limited to the following:

a.        Failing to adequately test the safety of Saxagliptin, which would have shown that Saxagliptin causes an unreasonably high risk of dangerous side effects and which would have enabled Defendants to give adequate and appropriate warnings to prescribing physicians and the consuming public, including Plaintiff's physicians and Plaintiff;

b.        Failing to design Saxagliptin in a manner that properly minimizes effects on receptors that are and were known to be associated with certain serious adverse effects;

c.        Failing to conduct adequate pre-clinical and clinical testing to determine the safety of Saxagliptin;

d.        Failing to report to the FDA, the medical community, and the general public the Saxagliptin certain data indicating that using Saxagliptin for its intended purpose and as prescribed causes an increased risk of dangerous and life-threatening adverse effects including heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions;

e.        Failing to adequately perform certain pharmacovigilance and safety surveillance of Saxagliptin pursuant duties established by the Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, and related regulations, *see, e.g.*, 21 C.F.R. § 314.80, including but not limited to

i.        conducting post-market safety monitoring, surveillance, and assessments;

ii.        developing written procedures for the surveillance, receipt, evaluation and reporting of postmarketing adverse drug experiences to the FDA;

       iii.         periodically searching for and reviewing any newly published information about the safety and/or risk of Saxagliptin;

       iv.         seeking, establishing appropriate channels for receiving, obtaining, investigating, analyzing, reporting, and timely submitting adverse event reports, and when required, obtaining and submitting follow-up information to the FDA;

       v.         properly assessing whether certain adverse drug experiences are "serious and unexpected";

       vi.         including all required information in adverse event reports;

       vii.         submitting periodic safety update reports to the FDA that satisfy the requirements set forth in 21 C.F.R. § 314.80(c)(i)-(ii); and

       viii.         detecting and reporting a serious safety signal to the FDA, enabling them to determine whether to require a postmarketing study;

       f.         Designing, manufacturing, marketing, advertising, distributing, and selling Saxagliptin to consumers, including Plaintiff, without an adequate warning of risks associated with using the products and without proper and adequate instructions to avoid the harm which could foreseeably occur as a result of using the products;

       g.         Failing to exercise reasonable and due care when advertising, promoting, and selling Saxagliptin;

       h.         Failing to use reasonable and due care in the preparation, design and development of Saxagliptin to prevent, avoid, or minimize the risk of injury to consumers who used the products, including Plaintiff;

i.      Failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing and post-marketing surveillance and testing to Plaintiff, consumers, the medical community, and the FDA;

j.      Failing to accompany Saxagliptin with proper warnings about certain adverse drug reactions as required by 21 U.S.C. § 201.57;

k.      Failing to use reasonable and due care in the manufacture, inspection, and labeling of Saxagliptin to prevent risk of injuries to individuals who used the products, including Plaintiff;

l.      Failing to provide adequate and accurate training and information to the sales representatives who sold Saxagliptin;

m.      Failing to educate healthcare providers, including Plaintiff's physicians, and the public, including Plaintiff, about the safest use of Saxagliptin;

n.      Failing to give healthcare providers adequate information to weigh the risks of serious injury associated with the products;

o.      Failing to test and inspect Saxagliptin in a reasonable manner in order to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured, and sold;

p.      Failing to warn the medical community, including Plaintiff's physicians, and the consuming public, including Plaintiff, of the danger of adverse medical conditions caused by Saxagliptin use; and

q.      Failing to label Saxagliptin to adequately warn Plaintiff of the serious adverse side effects associated with Saxagliptin use.

64.     Defendants advertised, marketed, sold and distributed Saxagliptin despite the fact that Defendants knew or should have known of the increased risks associated with using the products, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects of which Plaintiff and Plaintiff's physicians would not have been aware and could not have discovered through reasonable diligence.

65.     Defendants, individually and collectively, had a duty to warn the FDA, their customers, the medical community, and the public about the increased risk of cardiovascular injuries, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and Defendants individually and collectively failed satisfy that duty.

66.     Defendants are guilty of negligence *per se* in that the Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, et seq., and the Sherman Food, Drug and Cosmetic Law, as well as other applicable laws, statutes, and regulations.

a.      The Defendants' acts and omissions, including but not limited to Defendants' off-label marketing, constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.* This legislation was intended to protect consumers, including Plaintiff, and these regulations were designed to prevent the precise type of injuries Plaintiff suffered. Defendants' conduct proximately caused Plaintiff's injuries.

b.      The Defendants' also failed to report adverse events as required by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.* This legislation was intended to protect consumers, including Plaintiff, and these regulations were designed to

prevent the precise type of injuries Plaintiff suffered. Defendants' conduct proximately caused Plaintiff's injuries.

67.     Despite the fact that Defendants knew or should have known that Saxagliptin causes increased risk of serious injury, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions, Defendants continued to manufacture, market, advertise, sell and distribute Saxagliptin to consumers, including Plaintiff.

68.     Defendants negligently and recklessly represented to Plaintiff, physicians, and other persons and professionals Defendants knew would justifiably rely on the representations, that Saxagliptin was safe to use and that the utility of the products outweighed any risk in use for their intended purposes.

69.     Defendants negligently and recklessly failed to disclose to Plaintiff and others important safety and efficacy information about Saxagliptin, thereby suppressing material facts that they had a duty to disclose.

70.     Defendants' representations about the safety and adverse side effects of Saxagliptin were negligently and recklessly made in that Saxagliptin in fact caused injury, was unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

71.     Defendants knew or should have known that their representations and omissions were false.  Defendants made such false, negligent and reckless representations and omissions with the intent or purpose that Plaintiff and any non-defendant physicians would rely upon such representations, leading to the use of Saxagliptin as described.

72.     Defendants omitted, suppressed and/or concealed material facts concerning the dangers and risk of injuries associated with the use of Saxagliptin, including serious injury.

Furthermore, Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the serious nature of the risks associated with the use of Saxagliptin.

73.     At the time Defendants made these misrepresentations and/or omissions, they knew or should have known that Saxagliptin was unreasonably dangerous and not what Defendants had represented to Plaintiff, as well as the medical community, the FDA, and the consuming public.  Defendants either intentionally made these statements knowing that they were false or recklessly asserted them as of their own knowledge with disregard for whether the statements were true or false.

74.     Defendants' misrepresentations and/or omissions were undertaken with an intent that doctors, including Plaintiff's physicians, and patients, including Plaintiff, rely upon them.

75.     Plaintiff and Plaintiff's physicians did not know that these representations were false and justifiably relied on and were induced by Defendants' misrepresentations, omissions, and/or active concealment of the dangers of Saxagliptin to employ these products.

76.     Had Plaintiff been aware of the increased risk of side effects associated with Saxagliptin and the relative efficacy of Saxagliptin compared with other readily available products, Plaintiff would not have used these products.

77.     As a direct and proximate consequence of Defendants' negligent, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiff sustained and will continue to sustain physical, psychological and emotional injuries, as well as severe permanent physical impairment and/or severe disfigurement, and Defendants' breach of the duty they owed to Plaintiff was a substantial factor in bringing about these injuries.

78.     Further, as a result of Plaintiff's injuries, Plaintiff sustained damages, including without limitation past and future medical expenses, past and future lost time, past and future

emotional distress, special and/or consequential damages, loss of enjoyment of life and pain and suffering.

79.    Defendants' actions, inactions, misstatements, and omissions, as well as the active concealment thereof, were committed (a) maliciously, wantonly, and/or with a recklessness suggesting improper motive or vindictiveness, and/or (b) with fraud, malice, and/or gross negligence.  The imposition of punitive damages is, therefore, warranted.

80.    Superior officers and directors for each of the Defendants ordered, participated in, or ratified Defendants' actions, inactions, misstatements and omissions, as well as the active concealment thereof, and they were complicit in such oppressive conduct.

## COUNT II

## STRICT PRODUCT LIABILITY – DESIGN DEFECT

Plaintiff incorporates by reference each and every preceding and succeeding paragraph of this Complaint as if fully set forth in this cause of action and further alleges as follows:

81.    At all relevant and material times, Defendants also designed, developed, manufactured, packaged, marketed, advertised, distributed and sold Saxagliptin, placing the products into the stream of commerce, and Defendants placed the Saxagliptin used by Plaintiff on the market.

82.    Saxagliptin left Defendants control in a defective condition, and Saxagliptin was expected to reach, and did reach, users and consumers, including Plaintiff, without substantial change in the condition in which it left Defendants' control.

83.    At all times, including when Plaintiff was injured, Plaintiff used Saxagliptin for the purpose and in the manner normally intended by Defendants.

84.     When each Saxagliptin product used by Plaintiff entered the stream of commerce, it was defective and unreasonably dangerous in one or more of the following manners:

a.     Saxagliptin was dangerous because it failed to perform in a manner reasonably expected in light of its nature and intended function;

b.     Saxagliptin contained manufacturing and design defects in that each product caused and/or increased the risk of experiencing an adverse event, including, but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions;

c.     Saxagliptin was not safe because the health risks associated with each Saxagliptin product outweighed the benefits;

d.     Saxagliptin was marketed and promoted for use when they carried an unreasonable and unnecessary risk of serious injury;

e.     Saxagliptin was insufficiently and/or inadequately tested by Defendants;

f.     Saxagliptin was not safe due, in part, to inadequate and defective instructions and inadequate and defective warnings provided by Defendants;

g.     Saxagliptin was unreasonably dangerous in that, as designed, the risks of serious injury posed by using the products exceeded any benefits the products were designed to or might in fact bestow;

h.     Saxagliptin was defective in design in that the products neither bore, nor were packaged with, nor were accompanied by, warnings adequate to alert users, including Plaintiff, of the increased risks associated with using the products, including, but not limited to, the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions;

      i.      Saxagliptin was not accompanied by adequate warnings and instructions for use that included adequate information to fully apprise users, consumers, and the medical, pharmaceutical and scientific communities of the potential risks and serious side effects associated with using the products;

      j.      Saxagliptin was unsafe for normal or reasonably anticipated use.  Said products were defective and unreasonably dangerous in design, construction, and/or composition;

      k.      Saxagliptin was defective and unreasonably dangerous, because the products did not conform to an express warranty of the manufacturer about the product;

      l.      Saxagliptin was defective and unreasonably dangerous, because other feasible alternative designs were and are reasonably available, which are equally or more as effective and which do not carry the same risk of serious cardiovascular adverse events; and

      m.      Saxagliptin was defective and unreasonably dangerous due to inadequate warnings, inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

85.      The Saxagliptin used by Plaintiff was defective in the foregoing manners at the time it left the hands of the manufacturer, and at the time it was sold Plaintiff or otherwise came under Plaintiff's control.

86.      Saxagliptin's defective condition made it unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, in light of the ordinary knowledge common to the community as to the product's characteristics.  The risk of

serious adverse cardiovascular events is a danger or risk that is not within the ordinary knowledge common to the community as to Saxagliptin's characteristics.

87.     At all relevant and material times, Saxagliptin did not contain adequate warnings and its benefits did not justify its risks.

88.     At the time the Saxagliptin used by Plaintiff left Defendants' control, safer alternative designs existed that would have prevented or significantly reduced the risk of serious cardiovascular adverse events, and such alternative designs were economically and technologically feasible at that time by the application of existing or reasonably achievable scientific knowledge.

89.     Saxagliptin, as manufactured and supplied by the Defendants, was defective due to inadequate warnings and instructions because after Defendants knew or should have known of the risk of injuries from use, Defendants failed to provide adequate warnings to the medical community and the consumers to whom the drugs were directly marketed and advertised; and, further, Defendants continued to affirmatively promote Saxagliptin as safe and effective.

90.     Saxagliptin, as manufactured and supplied by Defendants, was a product that, if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner.

91.     A reasonable person who had actual knowledge of the increased risks associated with using Saxagliptin would have concluded that Saxagliptin should not have been marketed to or used by Plaintiff and Plaintiff's physicians.

92.     Despite the fact Defendants knew or should have known of the defective nature of Saxagliptin, Defendants continued to design, manufacture, and sell Saxagliptin so as to

maximize sales and profits at the expense of the public health and safety.  Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by Saxagliptin.

93.     Plaintiff was not aware of the aforementioned defects at any time prior to the injuries caused by Saxagliptin, and Defendants had not adequately warned Plaintiff of the danger and/or risk posed by Saxagliptin.

94.     Plaintiff and the non-defendant health care providers involved could not, through the exercise of reasonable care, have discovered the defective design and perceived its danger, the risk of serious cardiovascular adverse events, including heart failure, congestive heart failure, and cardiac failure, as well as life-threatening complications thereof and even death.

95.     Plaintiff could not have, by the exercise of reasonable care, avoided the injury Plaintiff ultimately suffered.

96.     Had adequate information regarding the safety (or lack thereof) of Saxagliptin been provided to Plaintiff, Plaintiff would not have used Saxagliptin.

97.     Defendants acted with conscious and/or deliberate disregard of the foreseeable harm caused by use of their products.

98.     But for Saxagliptin's defective condition, Plaintiff would not have been injured.

99.     Saxagliptin's defective condition, in a natural sequence, was a substantial factor in bringing about Plaintiff's injuries, and without Saxagliptin's defective condition, Plaintiff's injuries would not have occurred.

100.    As a direct and proximate result of Saxagliptin's defective condition, Plaintiff sustained and will continue to sustain physical, psychological and emotional injuries, as well as severe permanent physical impairment and/or severe disfigurement, and Saxagliptin's defective condition was a substantial factor in bringing about such injuries.

101.     Further, as a result of Plaintiff's injuries, Plaintiff sustained damages, including without limitation past and future medical expenses, past and future lost time, past and future emotional distress, special and/or consequential damages, loss of enjoyment of life and pain and suffering.

102.     Defendants' actions, inactions, misstatements, and omissions, as well as the active concealment thereof, were committed (a) maliciously, wantonly, and/or with a recklessness suggesting improper motive or vindictiveness, and/or (b) with fraud, malice, and/or gross negligence.  The imposition of punitive damages is, therefore, warranted.

103.     Superior officers and directors for each of the Defendants ordered, participated in, or ratified Defendants' actions, inactions, misstatements and omissions, as well as the active concealment thereof, and they were complicit in such oppressive conduct.

## COUNT III

## <u>STRICT PRODUCT LIABILITY – FAILURE TO WARN</u>

Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action, and further alleges as follows:

104.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold solely by Defendants, who alone placed these products into the stream of commerce for sale to and use by members of the consuming public, including Plaintiff.  Defendants placed the Saxagliptin used by Plaintiff on the market.

105.     Saxagliptin left Defendants control in a defective condition, and Saxagliptin was expected to reach, and did reach, users and consumers, including Plaintiff, without substantial change in the condition in which it left Defendants' control.

106.    The Saxagliptin manufactured by Defendants was in a defective condition and unreasonably dangerous when it left Defendants' control and entered into the stream of commerce.  The Saxagliptin reached Plaintiff without substantial change to the condition in which it left Defendants' control.  The Saxagliptin was defective and unreasonably dangerous when used by Plaintiff.

107.    Saxagliptin was unreasonably dangerous, even when used in a foreseeable manner as designed and intended by Defendants.

108.    Plaintiff is, and at all relevant and material times was, an ordinary consumer who is foreseeably expected to purchase Saxagliptin, and at no time did Plaintiff have any special knowledge that made Plaintiff a knowledgeable user such that Defendants were thereby relieved of their duty to warn Plaintiff.

109.    At all relevant and material times, including at the time Plaintiff was injured, Plaintiff used Saxagliptin for the purpose and in the manner normally intended by Defendants. Plaintiff was administered, or was prescribed and used, Saxagliptin for its intended purpose.

110.    Plaintiff ingested the Saxagliptin as instructed by Defendants, and as directed and prescribed by Plaintiff's physicians.

111.    On information and belief, Plaintiff used Saxagliptin in a foreseeable manner, the manner in which Defendants intended, recommended, promoted, and marketed Saxagliptin for use at all times relevant to this cause of action.

112.    The potential for Saxagliptin to cause serious cardiovascular adverse events was, and is, a danger of which Defendants knew, or should have known, in the exercise of reasonable care.

113.    Defendants failed to warn and/or inadequately warned Plaintiff, consumers, physicians including Plaintiff's physicians, and healthcare professionals about the increased health risks associated with using Saxagliptin.

114.    Plaintiff and Plaintiff's prescribing physicians did not have the same knowledge as Defendants and no adequate warning was communicated to them.

115.    Neither Plaintiff nor any of Plaintiff's prescribing physicians could have discovered any defect in the Saxagliptin through the exercise of reasonable care and/or reasonable diligence.

116.    As manufacturers of Saxagliptin, Defendants are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known those warnings and other clinically relevant information and data, which they distributed regarding the risks of injuries and death associated with the use of Saxagliptin, was incomplete and inadequate.

117.    Plaintiff did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiff or to Plaintiff's treating physicians.  The warnings given by Defendants were inaccurate, unclear, ambiguous, and/or incomplete.

118.    At all times relevant and material hereto, Defendants had and have a continuing duty to provide consumers, including Plaintiff, and Plaintiff's physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with Saxagliptin, as it became or could have become available to Defendants.

119.    Defendants marketed, promoted, distributed, and sold unreasonably dangerous and defective prescription Saxagliptin to health care providers empowered to prescribe and dispense to consumers, including Plaintiff, without adequate warnings and other clinically

relevant information and data. Through both omissions and affirmative misstatements, Defendants misled the medical community, including Plaintiff's prescribing physicians, about the risk/benefit balance of Saxagliptin, which resulted in injury to Plaintiff.

120.    Defendants knew or should have known that Saxagliptin caused unreasonably dangerous side effects and they continued to promote and market Saxagliptin without stating safer and more or equally effective alternative drug products existed and/or providing adequate clinically relevant information and data.

121.    Defendants knew or should have known that consumers, including Plaintiff, would foreseeably and needlessly suffer injury or death as a result of Defendants' conduct.

122.    Defendants failed to provide timely, adequate, and appropriate warnings to physicians, pharmacies, and consumers, including Plaintiff and to Plaintiff's intermediary physicians, in numerous ways, including but not limited to the following:

    a.    Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiff's physicians to the dangerous risks of Saxagliptin including, among other things, their tendency to increase the risk of, and/or cause, heart failure, congestive heart failure, and cardiac failure, as well as life-threatening complications thereof and death;

    b.    Defendants failed to inform Plaintiff and Plaintiff's physicians that Defendants did not adequately test Saxagliptin and failed to determine the full extent of safety risks associated with its use;

    c.    Defendants failed to adequately update Saxagliptin's labeling to include adequate post-marketing warnings and instructions after Defendants knew or should have

known of the significant risks of heart failure, congestive heart failure, cardiac failure, and death related to those events caused by using Saxagliptin; and

      d.     Defendants continued to aggressively promote and sell Saxagliptin even after they knew or should have known of the unreasonable risks of developing heart failure, cardiac failure, and death related to those events caused by using Saxagliptin.

123.     Saxagliptin's defective condition made it unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, in light of the ordinary knowledge common to the community as to the product's characteristics.  The risk of serious adverse cardiovascular events is a danger or risk that is not within the ordinary knowledge common to the community as to Saxagliptin's characteristics.

124.     The Saxagliptin used by Plaintiff was defective in the foregoing manners at the time it left the hands of the manufacturer, and at the time it was sold Plaintiff or otherwise came under Plaintiff's control.

125.     The risk of serious cardiovascular adverse events, including heart failure, congestive heart failure, and cardiac failure, as well as life-threatening complications thereof and even death, that Saxagliptin causes is not a danger that is readily recognized by ordinary consumers, including Plaintiff, or even ordinary prescribers, such as Plaintiff's prescribing physicians.

126.     Each and all Defendants had a duty to warn the FDA, the medical community, Plaintiff, and Plaintiff's physicians about the increased risks of these injuries, but failed to do so.

127.     Defendants had a duty and obligation to provide Plaintiff and Plaintiff's physicians with adequate clinically relevant information and data and warnings regarding the

adverse health risks associated with exposure to Saxagliptin, and/or that safer alternative drugs with equal or greater efficacy existed and were available, but they failed to do so.

128.    By failing to provide Plaintiff and Plaintiff's physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that safer alternative drugs with equal or greater efficacy existed and were available, Defendants breached their duty of reasonable care and safety.

129.    The warning that accompanied Saxagliptin was inadequate because it:

        a.    did not clearly indicate the scope of the risk or danger posed by Saxagliptin, and in fact, the warning that accompanied Saxagliptin at all times relevant and material to this action, did not even mention the risk of serious cardiovascular adverse events caused by Saxagliptin;

        b.    did not reasonably communicate the extent or seriousness of harm that could result from the risk or danger posed by Saxagliptin, and in fact, the warning that accompanied Saxagliptin at all times relevant and material to this action, did not communicate at all the extent or seriousness of harm that could result from the risk of serious cardiovascular adverse events caused by Saxagliptin; and

        c.    did not convey the risk or danger of serious cardiovascular adverse events that Saxagliptin causes in such a manner as to alert the reasonably prudent person, and in fact, the warning that accompanied Saxagliptin at all times relevant and material to this action, did not convey this risk or danger in any manner whatsoever.

130.    Upon information and belief, prior to prescribing Saxagliptin to Plaintiff, Plaintiff's prescribing physicians read the inadequate warning that in fact provided by Defendants with Saxagliptin.  Upon information and belief, if Plaintiff's prescribing physicians

had received an appropriate and adequate warning of the risk of serious cardiovascular adverse events, they Plaintiff's prescribing physicians either (a) would not have prescribed Saxagliptin to Plaintiff, or (b) would have passed that warning along to Plaintiff.

131.    Upon information and belief, prior to using Saxagliptin, Plaintiff read the inadequate warning that was in fact provided by Defendants with Saxagliptin.  Upon information and belief, if Defendants had provided an appropriate and adequate warning regarding the risk of serious cardiovascular adverse events, Plaintiff would not have used Saxagliptin.

132.    At all relevant and material times, Saxagliptin was not properly manufactured, did not contain adequate warnings, and its benefits did not justify its risks.  Furthermore, at the time of manufacture and distribution, Saxagliptin was capable of being made safe such that it would not have caused an increased risk of serious cardiovascular adverse events or such that users would at least be made aware of the increased risk of serious cardiovascular adverse events by labelling the product with an appropriate and adequate warning.

133.    The risk of suffering serious cardiovascular adverse events as a result of using Saxagliptin is a latent danger that results from the foreseeable use of Defendants' product, Saxagliptin.

134.    But for Saxagliptin's defective condition, Plaintiff would not have been injured.

135.    Saxagliptin's defective condition, in a natural sequence, was a substantial factor in bringing about Plaintiff's injuries, and without Saxagliptin's defective condition, Plaintiff's injuries would not have occurred.

136.    As a direct and proximate result of Saxagliptin's defective condition, Plaintiff sustained and will continue to sustain physical, psychological and emotional injuries, as well as

severe permanent physical impairment and/or severe disfigurement, and Saxagliptin's defective condition was a substantial factor in bringing about such injuries.

137.     Further, as a result of Plaintiff's injuries, Plaintiff sustained damages, including without limitation past and future medical expenses, past and future lost time, past and future emotional distress, special and/or consequential damages, loss of enjoyment of life and pain and suffering.

138.     Defendants' actions, inactions, misstatements, and omissions, as well as the active concealment thereof, were committed (a) maliciously, wantonly, and/or with a recklessness suggesting improper motive or vindictiveness, and/or (b) with fraud, malice, and/or gross negligence.  The imposition of punitive damages is, therefore, warranted.

139.     Superior officers and directors for each of the Defendants ordered, participated in, or ratified Defendants' actions, inactions, misstatements and omissions, as well as the active concealment thereof, and they were complicit in such oppressive conduct.

## COUNT IV

## STRICT LIABILITY – MISREPRESENTATION

Plaintiff incorporates by reference each and every preceding and succeeding paragraph as if fully set forth at length herein, and further alleges as follows:

140.     Defendants individually and collectively represented Saxagliptin was safe when used for its intended purposes, and further, by omission, Defendants represented that Saxagliptin did not increase risk of, and/or cause, heart failure, congestive heart failure, and cardiac failure, as well as life-threatening complications thereof and even death.

141.     Each of those representations by Defendants was false because Saxagliptin, in fact, was and is not safe when used for its intended purposes, and furthermore, the Saxagliptin

products did and do in fact increase the risk of and/or cause heart failure, congestive heart failure, and cardiac failure, as well as life-threatening complications thereof and even death.

142.    Defendants knew, should have known, and/or could have known that the Saxagliptin was not safe when used for its intended purposes for numerous reasons, including but not limited to the following:

a.    they received adverse event reports of serious cardiovascular adverse events during the conduct of premarketing clinical trials of Saxagliptin;

b.    they had in their exclusive possession and control information and data indicating that a safety signal existed regarding the risk of serious cardiovascular adverse events; and

c.    they derived substantial profits from sales of Saxagliptin, giving Defendants ample resources to conduct high powered postmarketing clinical trials that would have detected the increased risk of serious cardiovascular adverse events and enabled them to make a determination as to causality.

143.    Therefore, when Defendants made these misrepresentations as to the safety of Saxagliptin and their tendency not to cause serious cardiovascular adverse events, Defendants either knew they were false or represented these facts as of their knowledge with reckless disregard to whether they were true or false.

144.    These misrepresented facts concern the character and/or the quality of Saxagliptin, namely their safety and their tendency not to cause serious cardiovascular adverse events, including heart failure, congestive heart failure, and cardiac failure, as well as life-threatening complications thereof and even death.

145.    Defendants' affirmative misrepresentations and misrepresentations by omission were material because, upon information and belief, absent these misrepresentations and/or had consumers including Plaintiff and the medical community including Plaintiff's prescribing physicians been informed of the true nature, quality and character of Saxagliptin, Plaintiff's prescribing physician would not have prescribed Plaintiff the Saxagliptin and Plaintiff would not have used the Saxagliptin

146.    Defendants, either personally or through their corporations, businesses, subsidiaries, divisions, subdivisions, affiliates, partners, joint-venturers, predecessors, officers, directors, employees, representatives, independent contractors, and/or other agents,  made the foregoing misrepresentations to the public, including Plaintiff, through the use of various means, avenues and types of advertising, including without limitation:

      a.      in-print marketing, advertising and promotional materials;

      b.      on Defendant owned, controlled or supported websites and blogs;

      c.      in materials and advertisements to consumers, including Plaintiffs, stating that the use of Saxagliptin is safe; and

      d.      through sales persons and representatives who promoted the Saxagliptin to doctors, clinics and users.

147.    Defendants intended for their affirmative misrepresentations and misrepresentations by omission about the nature, quality and character of Saxagliptin to reach, and upon information and belief they did reach, consumers, including Plaintiff, and the medical community, including Plaintiff's prescribing physicians.

148.    Upon information and belief, when Plaintiff's prescribing physicians decided to prescribe Saxagliptin to Plaintiff, Plaintiff's prescribing physicians relied upon Defendants'

expertise, skill, judgment and knowledge, and as a result, Plaintiff's prescribing physicians relied upon Defendants' affirmative misrepresentations and misrepresentations by omission.  Upon information and belief, when Plaintiff decided to use Saxagliptin, Plaintiff relied upon Defendants' expertise, skill, judgment and knowledge, and as a result, Plaintiff relied upon Defendants' affirmative misrepresentations and misrepresentations by omission.

149.    As a result of having relied upon Defendants affirmative misrepresentations and misrepresentations by omission, Plaintiff's prescribing physician did prescribe Saxagliptin to Plaintiff, and Plaintiff did use and/or ingest Saxagliptin.

150.    As a direct and proximate result of Plaintiff's, and Plaintiff's prescribing physicians', reliance on Defendants' affirmative misrepresentations and misrepresentations by omission, Plaintiff was caused to suffer physical harm.  As a direct and proximate result of Plaintiff's, and Plaintiff's prescribing physicians', reliance on Defendants' affirmative misrepresentations and misrepresentations by omission, Plaintiff was caused to suffer physical, psychological and emotional injuries, which are permanent as lasting in nature, as well as the resulting damages alleged herein.

151.    Plaintiff's and Plaintiff's prescribing physicians' reliance upon Defendants' affirmative misrepresentations and misrepresentations by omission was justifiable for many reasons, including but not limited to the following:

    a.    Defendants possess expertise, skill, judgment and knowledge of experts in the field of pharmaceuticals;

    b.    Defendants, at all times relevant and material hereto, were under a duty to disclose the true nature, quality, and character of Saxagliptin because this was nonpublic

information over which Defendants had and continue to have exclusive possession and
control;

     c.     Defendants had the ability to and did spend enormous amounts of money
in furtherance of their purpose of marketing and promoting a profitable drug,
notwithstanding the known or reasonably known risks;

     d.     Defendants conducted extensive clinical trials and studies on the safety of
Saxagliptin, which could have, and should have, revealed the existence of the increased
risk of serious cardiovascular adverse events, including that suffered by Plaintiff;

     e.     Plaintiff and Plaintiff's prescribing physicians lacked the resources that
are and were available to Defendants at all times relevant and material hereto, which
enabled Defendants alone to determine the true nature, extent and identity of any health
risks or safety issues related to Saxagliptin, and Plaintiff and Plaintiff's prescribing
physicians were therefore forced to rely upon Defendants' representation;

     f.     Defendants were and continue to be in possession of information and data
that shows the risk and dangers of Saxagliptin that is not otherwise in the possession of or
available to the FDA, the public, the medical community, Plaintiff's prescribing
physicians, and/or Plaintiff; and

     g.     When Plaintiff's prescribing physicians decided to Saxagliptin to Plaintiff,
when Plaintiff decided to use Saxagliptin as prescribed, and when Plaintiff was injured,
no person or entity other than Defendants possessed or was aware of any fact,
information or data suggesting or otherwise indicating either that Saxaglitpin could cause
serious cardiovascular adverse events or that Defendants' representations should not be
trusted, and no person or entity other than Defendants' possessed or was aware of any

fact, information or data that would have made a reasonably prudent person suspicious of Defendants' wrongdoing.

152.    Plaintiff's justifiable, reasonable and objective belief at the time of use and at the time of injury, therefore, was that Saxagliptin was safe and fit for its intended use, and that Saxagliptin did not cause an increased risk of serious cardiovascular adverse events, including heart failure, congestive heart failure, and cardiac failure, as well as life-threatening complications thereof and even death.

153.    Defendants therefore misrepresented to the public, including consumers such as Plaintiff, material facts concerning the character and quality of Saxagliptin, which Plaintiff justifiably relied upon, thereby directly and proximately resulting in the physical harm to Plaintiff alleged herein.

154.    Defendants' misrepresentations, in a natural sequence, were a substantial factor in bringing about Plaintiff's injuries, and absent Defendants' misrepresentations, Plaintiff's injuries would not have occurred.

155.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff sustained and will continue to sustain physical, psychological and emotional injuries, as well as severe permanent physical impairment and/or severe disfigurement, and Saxagliptin's defective condition was a substantial factor in bringing about such injuries.

156.    Further, as a result of Plaintiff's injuries, Plaintiff sustained damages, including without limitation past and future medical expenses, past and future lost time, past and future emotional distress, special and/or consequential damages, loss of enjoyment of life and pain and suffering.

157. Defendants' actions, inactions, misstatements, and omissions, as well as the active concealment thereof, were committed with fraud, malice, and/or gross negligence. The imposition of punitive damages is, therefore, warranted.

## COUNT V

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges as follows:

158. At all times mentioned in this Complaint, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold Saxagliptin. Before Plaintiff was prescribed Saxagliptin, Defendants impliedly warranted to Plaintiff, and Plaintiff's physicians and healthcare providers, that Saxagliptin was of merchantable quality and safe for its intended use.

159. When Defendants placed Saxagliptin into the stream of commerce, they knew and intended that Saxagliptin would be used by consumers such as Plaintiff.

160. Defendants knew of the use for which Saxagliptin was intended and impliedly warranted Saxagliptin to be of merchantable quality, safe and fit for their intended use, and fit for the ordinary purposes for which Saxagliptin is used.

161. Plaintiff and Plaintiff's prescribing physicians reasonably relied upon Defendants' expertise, skill, judgment and knowledge, and upon the implied warranty that Saxagliptin was of merchantable quality, safe, and fit for use by Plaintiff and other consumers.

162. At no time did Plaintiff fail to follow the directions for Saxagliptin that were provided by its manufacturers, the Defendants in this action.

163.    The Saxagliptin Plaintiff used was not of merchantable quality, safe, or fit for its intended use, and it did not measure up to the promises or facts stated on the Saxagliptin label and/or it was not adequately contained, packaged and labeled.  This defect existed when Saxagliptin left Defendants' control.

164.    The Saxagliptin Plaintiff used was unsafe for its intended use and was not merchantable quality, as warranted by Defendants, in that Saxagliptin had very dangerous propensities when used as intended and could cause users to suffer severe injury or death. Saxagliptin was unaccompanied by adequate warnings of these dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution.

165.    Saxagliptin did not measure up to the promises or facts states on its label because its label represented that it included warnings about all known risks of serious adverse events, but the label did not warn about the risk of serious cardiovascular adverse events caused by Saxagliptin, including heart failure, congestive heart failure, heart failure and/or life-threatening complications thereof and even death.

166.    The Saxagliptin Plaintiff used was neither safe nor fit for use.  It is unsafe because Saxagliptin's tendency to cause serious cardiovascular injuries coupled with its lack of information regarding the same renders it unreasonably dangerous.  It is unfit for the ordinary purposes for which it is used because the gravity and likelihood of serious injury or death far outweighs any claimed benefits.

167.    Saxagliptin failed to perform in accordance with the terms of said warranty because it did not perform safely, and contrary to Defendants' implied representations, it did cause Plaintiff to suffer serious cardiovascular adverse events.

168.    As a direct and proximate result of Defendant breach of these warranties, Plaintiff sustained and will continue to sustain permanent and lasting physical, psychological and emotional injuries, as well as severe permanent physical impairment and/or severe disfigurement, and Saxagliptin's defective condition was a substantial factor in bringing about such injuries.

169.    Further, as a result of Plaintiff's injuries, Plaintiff sustained damages, including without limitation past and future medical expenses, past and future lost time, past and future emotional distress, special and/or consequential damages, loss of enjoyment of life and pain and suffering.

170.    Defendants had in their exclusive possession and control information and data suggesting that Saxagliptin did not conform to their express warranties.  At no earlier time could Plaintiff have learned that Defendant breached these warranties because Defendants engaged in acts of willful, knowing, malicious, intentional, affirmative and active concealment to prevent users, the FDA, and the general consuming public, including Plaintiff from discovering the true nature, quality and character of Saxagliptin.

171.    Because Plaintiff was unable to discover at any time earlier that Defendants had breached their express warranties, Plaintiff has hereby provided Defendants with timely notice of their breach.

172.    Defendants' actions, inactions, misstatements, and omissions, as well as the active concealment thereof, were committed (a) maliciously, wantonly, and/or with a recklessness suggesting improper motive or vindictiveness, and/or (b) with fraud, malice, and/or gross negligence.  The imposition of punitive damages is, therefore, warranted.

173.    Superior officers and directors for each of the Defendants ordered, participated in, or ratified Defendants' actions, inactions, misstatements and omissions, as well as the active concealment thereof, and they were complicit in such oppressive conduct.

## COUNT VI

## **BREACH OF EXPRESS WARRANTY**

Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges as follows:

174.    The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandizing, advertising, promoting, supplying and selling of Saxagliptin was expressly warranted to be safe for use by consumers and the general public, including Plaintiff.

175.    Defendants expressly represented to Plaintiff, consumers and the medical community that Saxagliptin was:

  a. safe;

  b. efficacious;

  c. fit for its intended use;

  d. of merchantable quality;

  e. adequately tested;

  f. well tolerated in adequate and well-controlled clinical studies; and

  g. did not increase the risk of experiencing the serious and life-threatening side effects of heart failure, congestive heart failure, and cardiac failure, as well as life-threatening complications thereof or even death.

176.    Defendants expressly represented the foregoing in various ways and through the use of numerous means and avenues including, but not limited to, the following:

      a.    in print marketing, advertising, and promotional materials;

      b.    on Defendant-owned, controlled, or supported websites and blogs;

      c.    in materials and advertisements to Plaintiff and consumers; and

      d.    through sales persons and representatives who directly promoted Saxagliptin to doctors, including Plaintiff's physicians, clinics, and the medical community.

177.    Defendants breached those express warranties as follows:

      a.    Defendants misrepresented the safety of Saxagliptin in its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions;

      b.    Defendants misrepresented the risks associated with using Saxagliptin;

      c.    Defendants withheld and/or concealed and/or downplayed the information and/or evidence that the products were associated with an increased risk of serious injury;

      d.    Defendants misrepresented that Saxagliptin was as safe or safer than other available forms of treatment for Plaintiff's conditions; and

      e.    Saxagliptin was unaccompanied by adequate warnings of its dangerous propensities about which Defendants knew or could have known at the time of distribution.

178.    At no time did Plaintiff fail to follow the directions for Saxagliptin that were provided by its manufacturers, the Defendants in this action.

179.     At all relevant times, Saxagliptin did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

180.     At all relevant times, Saxagliptin did not perform in accordance with the Defendants' express representations and warranties because Saxagliptin is not safe and causes a serious increase in the risk of extremely dangerous and life-threatening side effects and even death, and it did cause Plaintiff to suffer serious cardiovascular adverse events.

181.     These defects existed when the Saxagliptin used by Plaintiff left Defendants' possession and control.

182.     The medical community, including Plaintiff's prescribing physicians, relied upon Defendants' express warranties when deciding to prescribe or administer Saxagliptin. Consumers and the general public, including Plaintiff relied upon Defendants' express warranties when deciding to purchase and use Saxagliptin.

183.     As a direct and proximate result of Defendants' breach of these warranties, Plaintiff sustained and will continue to sustain permanent and lasting physical, psychological and emotional injuries, as well as severe permanent physical impairment and/or severe disfigurement, and Saxagliptin's defective condition was a substantial factor in bringing about such injuries.

184.     Further, as a result of Plaintiff's injuries, Plaintiff sustained damages, including without limitation past and future medical expenses, past and future lost time, past and future emotional distress, special and/or consequential damages, loss of enjoyment of life and pain and suffering.

185.     Defendants had in their exclusive possession and control information and data suggesting that Saxagliptin did not conform to their express warranties.  At no earlier time could

Plaintiff have learned that Defendant breached these warranties because Defendants engaged in acts of willful, knowing, malicious, intentional, affirmative and active concealment to prevent users, the FDA, and the general consuming public, including Plaintiff from discovering the true nature, quality and character of Saxagliptin.

186.    Because Plaintiff was unable to discover at any time earlier that Defendants had breached their express warranties, Plaintiff has hereby provided Defendants with timely notice of their breach.

187.    Defendants' actions, inactions, misstatements, and omissions, as well as the active concealment thereof, were committed (a) maliciously, wantonly, and/or with a recklessness suggesting improper motive or vindictiveness, and/or (b) with fraud, malice, and/or gross negligence.  The imposition of punitive damages is, therefore, warranted.

188.    Superior officers and directors for each of the Defendants ordered, participated in, or ratified Defendants' actions, inactions, misstatements and omissions, as well as the active concealment thereof, and they were complicit in such oppressive conduct.

## GLOBAL PRAYER FOR RELIEF AS TO ALL COUNTS

Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth here in full and further prays as follows:

**WHEREFORE**, to the furthest extent allowed by this Court and/or permitted at law, Plaintiff demands judgment against each Defendant and/or all Defendants, jointly and severally, on each of the foregoing Counts as follows:

a.      All available compensatory damages with respect to each cause of action;

b.      Past and future medical expenses, as well as the cost associated with past and future life care;

c.     Past and future lost wages and loss of earning capacity;

d.     Past and future emotional distress;

e.     Consequential and/or special damages;

f.     All available noneconomic damages, including without limitation pain,

suffering, and loss of enjoyment of life;

g.     Disgorgement of profits obtained through unjust enrichment;

h.     Restitution;
i.     Punitive damages with respect to each cause of action;

j.     Reasonable and recoverable attorneys' fees;

k.     Costs of this action;

l.     Pre-judgment and all other interest recoverable; and

m.     Such other and further relief at law or in equity as the Court deems just,

appropriate and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.


Dated: April 2, 2018              By:     /s/ Jonathan M. Sedgh_____

                                          Jonathan M. Sedgh (NY Bar No. NY-4557260)
                                          **WEITZ & LUXENBERG, P.C.**
                                          700 Broadway, 5th Floor
                                          New York, NY 10003
                                          Tel: (212) 558-5972
                                          Fax: (646) 293-7484

                                          *Counsel for Plaintiff*